IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROGER LEE COMPTON, JR.<br>    Plaintiff,<br><br>v.<br><br>LAURENCE S. WANG, M.D.,<br>    Defendant. | )<br>)  Civil Action No. 7:21-cv-00478<br>)<br>)<br>)  By:  Elizabeth K. Dillon<br>)       United States District Judge<br>) |

**MEMORANDUM OPINION**

In this action, Roger Lee Compton, Jr., a Virginia inmate proceeding *pro se*, alleges that Laurence S. Wang, M.D., failed to treat or inadequately treated Compton's sexually transmitted disease for about six months and failed to treat Compton's continuous diarrhea. (Am. Compl., Dkt. No. 15.) Dr. Wang moved for summary judgment (Dkt. No. 47), and, before considering the motion, the court allowed Compton to conduct limited discovery on relevant matters (Dkt. No. 52). Thereafter, Compton filed some requests for production (Dkt. No. 58), herein construed a motion pursuant to Federal Rule of Civil Procedure 56(d), and a motion to compel (Dkt. No. 60). Dr. Wang asked the court to stay the document requests and any additional discovery (Dkt. No. 62) pending the court's ruling on summary judgment. (Dkt. No. 62.)

Because the late requests for production seek documents irrelevant to the matters before the court, the court will deny the request for those documents and Compton's motion to compel. Furthermore, for the reasons stated below, the court will grant Dr. Wang's motion for summary judgment and dismiss his motion to stay discovery as moot.

I. BACKGROUND

**A. Procedural Background**

Compton initiated this action by filing a complaint on September 13, 2021, naming five defendants, including Dr. Wang. (Dkt. No. 1.) Subsequently, the court issued an order directing

plaintiff to file an amended complaint that complied with joinder rules and other instructions. (Dkt. No. 14.)  Plaintiff filed an amended complaint solely against Dr. Wang.  (Am. Compl.)

Compton's claims relate to his time incarcerated at Pittsylvania County Jail.  (Am. Compl. at 2.)  Compton alleges that he was held there beginning November 24, 2020, and that he had a sexually transmitted disease that was not treated until May 2021 or was only treated with over-the-counter medication (Ibuprofen).  He asserts that he suffered from burning while urinating, blistering, and swelling of his penis and that his penis is permanently scarred, but Dr. Wang said it was normal.  He also complains of "continuous diarrhea from infection" (*id*) and seeks compensation for pain and suffering and for the scarring to be removed.

On December 6, 2022, the court issued an opinion addressing various motions, including Dr. Wang's motion to dismiss.  (Dkt. No. 42.)  The court's order denied Dr. Wang's motion to dismiss, denied Compton's motion for summary judgment, denied without prejudice Compton's motion to appoint counsel, and denied without prejudice Compton's motion for discovery of medical records.  (Dkt. No. 43.)  Dr. Wang then moved for summary judgment.  (Dkt. No. 47.)

Compton responded to Dr. Wang's motion (Dkt. No. 50) and moved for discovery (Dkt. No. 51).  On February 15, 2023, the court issued an order granting plaintiff's motion for discovery insofar as the court construed it as discovery directed both toward Dr. Wang and as a request for a third-party subpoena to the Records Custodian at the Pittsylvania County Jail.  (Dkt. No. 52.)  The court directed the clerk to issue and mail the subpoena to the Records Custodian and ordered Dr. Wang to serve plaintiff with responses to the discovery requests.  (*Id.*; Dkt. No. 53 (Subpoena issued to Records Custodian).)  Further briefing on summary judgment was filed by plaintiff (Dkt. No. 54) and by Dr. Wang (Dkt. No. 56), as allowed by the court's February 15 order (Dkt. 52 at 2).

Then, on June 23, 2023, plaintiff filed another request for production of documents.

2

(Dkt. No. 58.)  In this request, plaintiff seeks medical records from facilities in Danville where Dr. Wang is the medical provider.  Plaintiff asserts that Dr. Wang discontinued his herpes medication (acyclovir) after he was transferred to a facility in Danville.  He also asserts that Dr. Wang withheld his records from another facility (Haynesville Correction Center).  (*Id.*)  Dr. Wang objected to the request as untimely, improper, and irrelevant.  (Dkt. No. 59.)

Plaintiff filed a response to Dr. Wang's objection, which he also titled a motion to compel.  (Dkt. No. 60.)  Dr. Wang then opposed the motion to compel.  (Dkt. No. 61.)  In this pleading, Dr. Wang notes that counsel received undated correspondence from plaintiff on June 26, 2023, requesting evidence, including records from Danville City Jail and Danville City Farm.  (Dkt. No. 61-1.)  Dr. Wang again objected to the motion to compel as untimely, improper, and irrelevant.  (Dkt. No. 61.)

Finally, on July 19, 2023, Dr. Wang filed a motion for a protective order staying discovery pending resolution of his pending motion for summary judgment.  (Dkt. Nos. 62, 63.)  Plaintiff opposes this motion.  (Dkt. No. 64.)

## B.  Undisputed Material Facts

Dr. Wang is a medical doctor and a contract employee at Pittsylvania County Jail and has worked in that capacity since July of 2018.  (Declaration of Laurence S. Wang (Wang Decl.) ¶¶ 1, 2, Ex. A, Dkt. No. 48-1.)  He was available to treat inmates and respond to inmate and prisoner medical complaints, needs, and concerns and was on call to address medical emergencies as needed.  (Wang Decl. ¶ 9.)  Dr. Wang treated, prescribed treatment, or examined inmates and prisoners or their medical records upon referral by staff nurses.  (*Id.* ¶¶ 7, 11.)  He also referred inmates and prisoners for examination, testing, or treatment at local healthcare facilities, including Sovah Health Danville.  (*Id.* ¶ 20.)

Compton was seen by Kathy Cook[1] at the jail on November 1, 2020. (Wang 008, Ex. B, Dkt. No. 56-2.) His vital signs were checked, and he was briefly examined and interviewed. During this meeting, he indicated that he had been prescribed Trazadone while he was a patient at Southern Virginia Mental Health Institute. He reported no other complaint at that time. (*Id.*) Shortly thereafter, Compton was briefly released from custody.

Compton returned to custody on November 24, 2020. During an intake screening, he denied any skin conditions or suspected communicable or venereal diseases. (Wang 005–006.) This was consistent with his previous intake on October 30, 2020. (Wang 001–004.) He was examined by Pam Ford[2] on November 25, and his vital signs and presentation were within normal limits. (Wang 009.) Dr. Wang reviewed Compton's medical records and prescribed 50 milligrams of Trazadone. (Wang Decl. ¶ 12.)

On December 2, 2020, Compton completed a Medical Department Inmate Request asking that his Trazadone dosage be increased and that he be provided a new eyeglass prescription. He also asked to be placed upon "effectoer", presumptively Effexor, a discontinued antidepressant. (Wang 011.) In response to this request, he was seen by Dr. Wang on December 3. During that visit, Compton complained of right big toe pain, so he was examined and diagnosed with onychomycosis (fungal growth in the nail bed) and advised to follow up if his symptoms did not improve. (Wang Decl. ¶ 13; Wang 009.)

On December 17, 2020, Compton completed an Offender Request Form asking to be transported to an emergency department to have a bullet from a prior gunshot wound removed from his head. (Wang 012.) In response, Dr. Wang saw him on December 23, and he complained of scalp pain and enlargement of his scrotum while making bowel movements. His

---

[1] The court presumes that Cook is a nurse, but the record is unclear.

[2] The court also presumes that Ford is a nurse.

previous gunshot wound to the head was noted, and, upon examination, he was found to have no evidence of complications from the wound. He was also examined and found negative for a hernia. No other symptoms were noted by observation or report. (Wang Decl. ¶ 14; Wang 009.)

Compton was next seen for a wellness check by Cook on December 30, 2020, and he reported no new complaints and asserted that gastrointestinal issues and headaches were improving. (Wang 009.) Then, on January 7, 2021, Compton refused to take his Trazadone. (Wang 013, 016.) On January 12, he complained of a loss of energy since he stopped taking the prescribed medication and indicated he wanted to be put back on the prescribed medication, Thorazine or Trazadone. (Wang 014–015.) In response, plaintiff's Trazadone prescription was renewed on January 20 for 25 milligrams. (Wang Decl. ¶ 16.)

Also on January 20, he complained of loose bowels. (Wang 016.) In response, Dr. Wang prescribed an anti-diarrheal medication, loperamide, on January 27, 2021. (Wang 016, 037; Wang Decl. ¶ 17.)

In early February, Compton requested vanilla Ensure twice a day and multivitamin supplements. This request was submitted to Dr. Wang and denied on February 11. (Wang 017.) In addition, he requested an eye exam, offering to pay with gift cards. Cook informed him that eye examinations had to be pre-paid and that they cannot be paid for with gift cards. (Wang 018.)

On February 19 and 22, Compton requested an increase in his Trazadone dosage, reporting increased anxiety. (Wang 019; Wang Decl. ¶ 16.) Dr. Wang returned plaintiff's prescription to its original 50 mg dosage. However, Dr. Wang discovered that plaintiff had attempted to divert his dosage on February 17. Thus, Compton was advised that if he did so again, his prescription would be stopped. (Wang Decl. ¶ 16.)

In early March, plaintiff complained of a rash on both sides of his nose and forehead, so

Dr. Wang prescribed hydrocortisone cream. (Wang 021–022.) Dr. Wang saw Compton on March 9 when Compton complained of a forehead rash and continued diarrhea. However, Compton was continuing to gain weight and he remained healthy otherwise, so Dr. Wang did not prescribe additional medication. He was advised to continue using the hydrocortisone cream. (Wang Decl. ¶ 18; Wang 021.)

On March 13, Compton complained about recurring lower back pain from a prior accident and was advised to take available over the counter medications for the pain. (Wang 021, 024.)

At the end of April, Compton noted he had used all of his hydrocortisone cream and the rash on his face and head remained. He also complained that his diarrhea persisted. (Wang 026.) In response, he was prescribed Bentyl, a prescription medication to treat irritable bowel syndrome, and additional hydrocortisone cream for his rash on April 29. (Wang 021, 026, 033; Wang Decl. ¶ 19.)

In a May 2, 2021 medical request, Compton wrote that he had a "boil really close to my private area." (Wang 069.) Then, on May 3, 2021, he filed a Grievance Form complaining of persisting diarrhea. He also reported that he had a "boil on my penis area that hurts." (Wang 027–029; Wang Decl. ¶ 20.) Dr. Wang saw Compton the next day. He noted a "small scab" on plaintiff's penis and entered an order for herpes simplex virus (HSV) testing. Dr. Wang also increased Compton's Bentyl dosage. (Wang 030, 033; Wang Decl. ¶ 20.)

The HSV testing was conducted at Sovah Health Danville on May 6 (Wang 032; Wang Decl. ¶ 20), and Dr. Wang learned that Compton tested positive for HSV on May 11 (Wang 030; Wang Decl. ¶ 21). Dr. Wang prescribed and Compton received his first acyclovir dosage, a medication used to treat the first outbreak of genital herpes, that same day. (Wang 030, 033; Wang Decl. ¶ 21.) Compton continued to receive 50 milligrams of Trazadone daily, 500

milligrams of acetaminophen twice a day, 20 milligrams of Bentyl twice a day, and 800 milligrams of acyclovir twice a day. (Wang Decl. ¶ 22.)

## II.  ANALYSIS

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25. Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

The court is charged with liberally construing complaints filed by *pro se* litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). At the summary judgment stage, however, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. *See Chisolm v. Moultrie*, C/A No. 4:21-03506-BHH-TER, 2023 WL 3631798, at *1 (D.S.C. May 2, 2023). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

**B. Request for Production; Motion to Compel; Motion to Stay Discovery**

After briefing on the motion for summary judgment was complete, and after the court had allowed Compton to conduct limited discovery, Compton filed a request for production of documents. (Dkt. No. 58.) Liberally construed, Compton's request for production may be construed as a motion to defer ruling on Dr. Wang's summary judgment motion pursuant to Rule 56(d). *See* Fed. R. Civ. P. 56(d) (providing that a court may defer considering a motion for summary judgment, deny the motion, or allow time to take discovery if the nonmovant shows that it cannot present facts essential to justify its opposition). Compton also filed a motion to compel. (Dkt. No. 60.) In both motions, however, plaintiff is seeking information relating to his medical treatment in Danville, after his release from Pittsylvania County Jail. Because the information sought by Compton is not relevant to his claims in this case, the court will deny Compton's motions to defer ruling and to compel.

As a result of Compton's late discovery requests, Dr. Wang filed a motion to stay discovery. Because the court is denying Compton's requests and granting summary judgment, the court will dismiss Dr. Wang's motion to stay discovery as moot.

8

**C. Compton Has Not Shown Deliberate Indifference To His Medical Conditions**

The court construes Compton's claims regarding his sexually transmitted disease and his diarrhea as claims that Dr. Wang was deliberately indifferent to serious medical conditions. Compton does not specify under what constitutional amendment he is bringing his claims, nor does he state whether he was a convicted prisoner or a pretrial detainee at the time of these events.[3]

Dr. Wang looked to the Eighth Amendment in his motion. "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). A constitutional violation occurs when "a prison official demonstrates 'deliberate indifference' to an inmate's serious medical needs." *Id.*

An Eighth Amendment claim of deliberate indifference has two components. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017). "The objective component of a deliberate indifference claim is satisfied by a serious medical condition." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). A serious medical condition is one that is "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.*

---

[3] If Compton was a pretrial detainee, then the Fourteenth Amendment, not the Eighth Amendment, governs his claim concerning the denial of medical care. *Mays v. Sprinkle*, 992 F.3d 295, 300 (2021). The Eighth Amendment standards have previously been adopted in addressing such claims by a pretrial detainee, although there is a circuit split as to whether *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), has altered that standard. *See Mays*, 992 F.3d at 301 & n.4 (explaining the split and collecting authority). In *Mays*, the Fourth Circuit declined to resolve the issue because the case did not require it to do so. *See id.* at 300–01. Similarly, because the court's resolution of Compton's claims herein would be the same under either standard, it is not necessary to determine definitively—at this time—whether he was a pretrial detainee or convicted prisoner or which standard applies.

On the subjective component, deliberate indifference is "a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. "In the context of a claim related to the denial of medical treatment or a delay in providing such treatment, 'a defendant acts with deliberate indifference if he had actual knowledge of the plaintiff's serious medical needs and related risks, but nevertheless disregarded them.'" *Griffin v. Mortier*, 837 F. App'x 166, 170 (4th Cir. 2020) (quoting *Gordon*, 937 F.3d at 357). "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care." *Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).

Moreover, an inmate's mere disagreement with medical providers as to the proper course of treatment also does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Akinola v. Lavin*, Civil Action No. DKC-22-657, 2023 WL 3320937, at *4 (D. Md. May 9, 2023) (citing *Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972)).

The undisputed record before the court demonstrates that Dr. Wang was not deliberately indifferent to Compton's medical needs. Instead, the record reflects that Dr. Wang responded promptly to the complaints of which he was aware. Specifically, as it regards Compton's HPV diagnosis, Compton was seen by Dr. Wang in early May 2021, the day after Compton first complained of a painful boil on his penis. Dr. Wang ordered HPV testing, which occurred two days later on May 6. Upon learning that Compton tested positive on May 11, Dr. Wang

prescribed medication, and Compton received his first dose on May 11 and a continued medication regiment. Similarly, Dr. Wang responded to Compton's complaints about diarrhea on several occasions by prescribing medication in a prompt and timely manner.

Compton's response to Dr. Wang's motion involves several failed attempts to create relevant issues of fact. First, he asserts that he submitted additional medical complaints. (Dkt. No. 50 at 1; Dkt. No. 54 at 1.) However, Dr. Wang, through counsel, provided plaintiff's entire medical file, including medical complaints. (Second Wang Decl. ¶¶ 6–7, Ex. A, Dkt. No. 56-1; Ex. B, Dkt. No. 56-2.) In any event, Dr. Wang never received or learned of any other medical complaints. (Second Wang Decl. ¶ 5.) Thus, even if Compton is correct in stating that he provided additional complaints—he provides no evidence that he did or that Dr. Wang knew of any such complaints—Dr. Wang cannot be found deliberately indifferent to a medical need or complaint of which he was unaware. *See Hairston v. Allen*, No. 7:19-cv-00328, 2022 WL 16630281, at *13–14 (W.D. Va. Nov. 2, 2022) (granting summary judgment in favor nursing assistants in the absence of evidence they were aware of relevant complaints). In other words, there is no factual issue that Dr. Wang "knew of and ignored a . . . serious need for medical care." *Young v. City of Mt. Ranier*, 238 F.3d 567, 576 (4th Cir. 2001).

Compton also complains that Dr. Wang should have diagnosed potential HPV when he reported swollen testicles to Dr. Wang in December 2020. However, scrotal swelling is not a symptom of an HSV outbreak. (Second Wang Decl. ¶ 10.) Moreover, misdiagnosis "is not actionable under § 1983. '[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'" *Bugg v. Burrell*, No. 1:20cv349 (AJT/TCB), 2020 WL 5995497, at *5 (E.D. Va. Oct. 9, 2020) (quoting *Estelle*, 429 U.S. at 106).

Compton next argues that Dr. Wang acknowledged that he had a herpes outbreak in March 2021 when he prescribed a hydrocortisone cream for scaling. (Dkt. No. 54 at 1.) However, the treatment notes indicate that Compton was negative for scaling. (Wang 021.) And there is no evidence that scaling is a symptom of an HSV outbreak. (Second Wang Decl. ¶ 10.) In any event, it was not until May 5, 2021, after Dr. Wang saw Compton and ordered HPV testing the day before, that Compton stated in a grievance form that he "was told that I may have herpes . . . ." (Wang 028.)

For these reasons, there are no genuine issues of fact, and Dr. Wang is entitled to judgment as a matter of law on Compton's deliberate indifference claim.

## III.  CONCLUSION

For the reasons stated in the foregoing opinion, Compton's request for production, which the court construes as a Rule 56(d) motion, will be denied; Compton's motion to compel will be denied; Dr. Wang's motion to stay discovery will be dismissed as moot; and Dr. Wang's motion for summary judgment will be granted. The court will issue an appropriate order.

Entered: September 8, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge